IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN KEATING, | ) | CASE NO.: 1:11 CV 593 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| AMERICA'S WHOLESALE LENDER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | <u>AND ORDER</u> |
| | ) | |

This matter is before the Court on Defendants Countrywide Home Loans, Inc. (dba America's Wholesale Lender)("Countrywide") and BAC Home Loans Servicing, LP's ("BAC") Motion to Dismiss Complaint.  (ECF #9).  Plaintiff filed a Response to the motion, and Defendant's filed a Reply.  (ECF # 12, 13).   After careful consideration of the briefs and a review of all relevant authority, the Court finds that Defendants' Motion to Dismiss should be GRANTED.

## **FACTUAL AND PROCEDURAL OVERVIEW**[1]

Plaintiff, Mr. Keating, filed a Complaint alleging that Countrywide solicited him to refinance a loan and mortgage he held on a parcel of real property located on West 115th Street, in Cleveland, Ohio.  Mr. Keating alleges that Countrywide represented that by taking out a new loan on the property, he "would lower his monthly payments and generate cash for himself." He also alleges that in order to induce him into refinancing, Countrywide provided him with an amortization schedule showing that his "payments would be lowered and that the loan would fully amortize in a thirty (30) year period."  Mr. Keating alleges that he relied on this representation and entered into a note and mortgage for the property in the principal amount of One Hundered and Thirty One Thousand and Five Hundred Dollars ($131,500.00).

At or about the time Mr. Keating executed the note and mortgage, Countrywide provided him with a document entitled "New Loan Payment Notice," which conformed to the amortization schedule they provided him as an inducement to enter into the loan.  He alleges, however, that since on or about March 29, 2004, the loan from Countrywide has not performed according to this schedule.  Rather, the loan has not amortized, and in many months has negatively amortized.  Mr. Keating alleges that the new loan is actually inferior to the loan he had prior to the refinancing.

Mr. Keating alleges that Countrywide knew that loan was complicated and that he "did not fully understand the nuances of that loan."  He alleges that Countrywide knew the

---

[1]The facts as stated in this Memorandum and Order are taken from the Complaint and should not be construed as findings of this Court.  In a motion to dismiss, the Court is obligated, for the purposes of that motion, to accept as true the facts set forth by the non-moving party, in this case, the Plaintiff.

amortization schedule and the New Loan Payment Notice they provided to him did not accurately reflect how the loan would perform, and that they knew that he would rely on this misinformation when entering into the refinance agreement.

Mr. Keating also alleges that Countrywide has been fraudulent in preventing him from obtaining copies of his monthly statement, and that they have fraudulently "negotiated" with him for five years, representing that they were working to resolve the problems.  Further, he alleges that while current on his loan payments, he contacted Countrywide to try to obtain a loan modification.  Mr. Keating alleges that Countrywide told him that he would have to be delinquent on his payments in order to qualify for a modification, and that they advised him not to make the next three payments due on the mortgage.  Mr. Keating alleges that he asked how this would affect his credit rating, and that Countrywide told him not to worry about his credit rating.  Following Countrywide's advice, Mr. Keating skipped his next three payments. Countrywide refused to modify the loan, and although Mr. Keating promptly paid the missed mortgage payments after his modification request was denied, his credit rating was adversely affected.

Mr. Keating alleges that Countrywide knew that the advise it gave him to skip payments would adversely affect his credit rating, and that he would rely on this advice in order to seek a loan modification.  He seeks compensatory and punitive damages for the alleged fraud.

Defendants have filed a Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. Pro. 12(B)(6).  Plaintiffs oppose this motion.

## **STANDARD OF REVIEW**

On a motion brought under Fed. R. Civ. P. 12(b)(6), this Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir. 1990). In evaluating a motion for dismissal under Rule 12(b)(6), the district court must "consider the pleadings and affidavits in a light most favorable to the [non-moving party]." *Jones v. City of Carlisle, Ky.*, 3 F.3d. 945, 947 (6th Cir. 1993) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). However, though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp. 971, 975 (S.D. Ohio 1993). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl' Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly* at 555. In deciding a Rule 12(b)(6) motion, this Court must determine not whether the complaining party will prevail in the matter but whether it is entitled to offer evidence to support the claims made in its complaint. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## **ANALYSIS**

A. Count One

Count One of the Complaint sets forth allegations of fraud, and cites to various statutory definitions contained in the Ohio Mortgage Broker Act ("OMBA").  To the extent that Count One may have intended to include a claim under the OMBA, specifically O.R.C. § 1322.07, that claim must fail.  The Complaint alleges that Countrywide is a "loan originator" under the OMBA. Although the Court must take all of the facts set forth in the Complaint as true, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See City of Heath, Ohio v. Ashland Oil, Inc., 834 F.Supp 971, 975 (S.D.Ohio 1993).  The documents attached to the Complaint along with the factual allegations in the Complaint show that Countrywide was instead the lender in the transaction.  Under the OMBA, the lender is not a "mortgage broker" for purposes of the Act.  O.R.C. § 1322.01(G)(2)(a).  Mr. Keating does not contest this in his response, instead he argues that Count One should be maintained as a common law fraud claim.

Count One also fails to state an actionable claim for fraud.  The statute of limitations for fraud claims in Ohio is four years.  Ohio Rev. Code § 2305.09.  The discovery rule established in *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 180, 546 N.E.2d 206, tolls the running of the four-year period until the plaintiff "discovers, or in the exercise of reasonable care, should have discovered the complained-of injury."  The Complaint alleges that since on or about March 29, 2004, the loan from Countrywide has not performed according to the amortization schedule provided to Mr. Keating before he signed the loan.  Rather, Mr. Keating alleges that the loan has not amortized, and in many months has negatively amortized.  He alleges that his payments have been higher than set forth in the amortization schedule, and that he had been negotiating with the Bank

for five years prior to filing the suit in an attempt to address the problem. These factual allegations make clear that Mr. Keating was aware of his injury at least five years before filing his suit, if not as early as March of 2004.  Either way, he clearly discovered the alleged injury more than four years before filing this action, and his fraud claims are, therefore, barred by the statute of limitations.

Mr. Keating's fraud claim is also barred by the parol evidence rule. Ohio's parol evidence rule, "does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement. *Galmish v. Cichini*, 90 Ohio St. 3d 22, 734 N.E.2d 782, 788 (2000). However, a fraudulent inducement claim requires more than a mere allegation that a statement or agreement made prior to the contract is different from that which now appears in a written contract. *Id*. at 790. Rather, the alleged false promise must be shown to be independent of or consistent with the written instrument. *Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 613 (6th Cir. 2001)(citing *Galmish*, 734 N.E.2d at 791).

Here, Mr. Keating asserts that he was fraudulently induced into signing an agreement based upon an oral promise of future performance. He alleges that the Defendants represented that his "payments would be lowered" and that the loan would "generate cash" and "fully amortize in thirty (30) year period." (Complaint ¶ 5). Mr. Keating further contends that the loan from Countrywide has not performed according to the amortizing schedule provided to Mr. Keating before he signed the loan.[2]  However, parol evidence of a promise which contradicts an integrated written agreement will not be admissible. Mr. Keating signed a note for a variable interest rate loan. The terms of the

---

[2] Plaintiff's fraud claim depends in large part upon the "representations" made in the amortizing schedule Mr. Keating was provided prior to entering into the actual note and mortgage. Although Mr. Keating alleges he was provided with a written copy of an amortization schedule, he does not allege that anyone at Countrywide actually promised that the loan would perform exactly as set forth in that amortizing schedule.

note clearly indicate that the loan was subject to change both with regard to the applicable interest rate, and the actual monthly payment required. Specifically, the note stated that an interest rate of 3.375% could change each month, subject to certain limitations, although it would not exceed 9.950%.[3] Further, it states the monthly payments would be periodically recalculate and could increase depending on the interest rate and the rate of amortization. Therefore, any oral representation, made prior to the signing of the note, that contradicts these terms, would constitute inadmissible parol evidence, and cannot form the basis for a fraud in the inducement claim.

Additionally, in the Adjustable Rate Rider there is language that states that the loan may not fully amortize by the "Maturity Date" and that the payments may not reach the full amount of the principal.[4] This conflicts with the example provided in the earlier amortization schedule, and alters the assumptions upon which those calculations depend. Because the alleged representations contradict the written contract, Mr. Keating's fraud claim is barred by the parole evidence rule.

B. Count Two

In Count Two, Mr. Keating claims that Plaintiffs misled him, to his detriment, when they encouraged him to skip payments on his loan in order to qualify for a loan modification. Mr. Keating's brings this claim under the theory of promissory estoppel. The promisory estoppel claims fails, however, as a matter of law because he had a valid and enforceable contract with Countrywide. Ohio law bars a promissory estoppel claim when there is an express contract between the parties.

---

[3] There is no allegation that the interest rate ever rose above the contractual limit of 9.950%.

[4] Adjustable Rate Rider 3(A) and 3(E)

See, e.g., *Hughes v. Oberholtzer* (1954), 162 Ohio St. 330, 335.   Promisory estoppel is not available as a remedy where the legal relationship between the parties is governed by a valid and enforceable contract. *Gibson Real Estate Mgt., Ltd. v. Ohio Dept. of Admin.*, 2006 WL 322304 (Jan. 4, 2006), *Warren v. Trotwood-Madison City Sch. Dist. Bd. Of Educ.*, 1999 WL 148223 (Mar. 19, 1999).

A claim of promissory estoppel requires reasonable reliance. See Restatement of the Law 2d, Contracts 1981, §90. Mr. Keating alleges that Countrywide told him that in order to qualify for a loan modification he would have to be delinquent on his payments. His response does not allege, however, that Countrywide promised to modify his loan if he was, indeed, delinquent. Mr. Keating's factual allegations demonstrate that he may have informally discussed loan modification requirements with Countrywide; however, no actual promises were made to induce Mr. Keating into skipping payments.

Further, Mr. Keating alleges that Countrywide told him not to worry about his credit rating, in the event that he decided to skip payments in order to qualify for a loan modification.  However, this statement was also not a promise. Countrywide never promised Mr. Keating a loan modification or a stable credit rating if he skipped payments. He alleges to have been damaged by taking Countrywide's advice. General advice is not a binding promise upon which Mr. Keating may reasonably rely.  His claim under the theory of promissory estoppel is barred by the existence of a valid contract and the lack of any actual promise by Countrywide.

## **CONCLUSION**

For the reasons set forth above Defendants' Motion to Dismiss the Complaint, (ECF #9), is GRANTED. IT IS SO ORDERED.

 /s/Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED:   June 21, 2011